## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **EARL AL KALASHNIKOV,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:19-cv-00411-CW-JCB** |
| **GARY R. HERBERT, et al.,** | **District Judge Clark Waddoups** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is Plaintiff Earl Al Kalashnikov's ("Mr. Kalashnikov") amended complaint.[3] At the outset, the court notes that Mr. Kalashnikov has been permitted to proceed in forma pauperis under 28 U.S.C. § 1915 ("IFP Statute").[4] Accordingly, the court will review the sufficiency of Mr. Kalashnikov's amended complaint under the authority of the IFP Statute. Based upon the analysis set forth below, the court recommends that this action be dismissed with prejudice.

---

[1] ECF No. 7.
[2] ECF No. 21.
[3] ECF No. 20.
[4] ECF No. 2.

## BACKGROUND

The following background is based upon the court's liberal reading of Mr. Kalashnikov's amended complaint. Mr. Kalashnikov brings this action against the following Defendants: Governor Gary R. Herbert, Lieutenant Governor Spencer Cox, Attorney General Sean Reyes, Shelter the Homeless Chairman Harris H. Simmons, and philanthropist Gail Miller (collectively, "Defendants"). The suit is brought against all Defendants in their official capacities.[5] Mr. Kalashnikov is an African American, homeless male that has experienced homelessness intermittently for the past 5 years.

In 2019, Utah closed the Road Home, an emergency homeless shelter and opened three new resource centers for individuals experiencing homelessness: the Men's Resource Center ("MRC"), the Geraldine E. King Women's Resource Center ("WRC"), and the Gail Miller Resource Center ("GMRC"). Prior to 2019, the Road Home had been the flagship homeless shelter located central downtown Salt Lake City. The MRC is an emergency homeless shelter for single men, located at 3380 South 1000 West, South Salt Lake, UT 84119.[6] The WRC is an emergency homeless shelter for women, located at 131 East 700 South, Salt Lake City, UT 84111. The GMRC is a homeless shelter for both men and women, located at 242 West Paramount Avenue, Salt Lake City, UT 84115.

Mr. Kalashnikov asserts various claims against the above-named Defendants for locational inequities alleged to exist between the men's shelter and the women's shelters. Mr. Kalashnikov's claims are premised on "disparity in locations" between the MRC and the WRC

---

[5] ECF No. 20 at ¶¶ 18-22.
[6] The MRC also operates under the Road Home name.

and GMRC.[7] Specifically, he contends the location of the MRC is "unjust" in that it "offers less freedoms for men, being farther away from such unequal urban benefits that a disabled homeless women has at the women's [shelter]."[8] He describes the MRC locale as "wedged in between the Jordan River's natural barrier and the county jail, on the outskirts of Salt Lake City which is already being plagued by drug trafficking."[9]

Mr. Kalashnikov describes the WRC and GMRC, each, by contrast, as recipients of "preferential treatment . . . by being located within the residential/business zones of Salt Lake City and blocks away from the Utah Transit Authority [] 'free fare zone' area."[10] He further states that the women's shelters are situated in "area[s] designated with the low-income and homeless in mind" while "displac[ing] all homeless transient males to be forcibly removed as 'undesirable elements' as far from downtown SLC in favor of women."[11] By selecting an "inferior location" for the MRC, Mr. Kalashnikov argues that Defendants discriminated against him on the basis of race, gender, and disability.[12] Mr. Kalashnikov also asserts that the "legislation called Operation Rio Grande ("ORG")" was illegal and the authorities that implemented the ORG plan "abuse[d] their authority by acting [outside] the color of law[.]"[13]

Based on those general allegations, Mr. Kalashnikov asserts the following causes of actions against Defendants for violation of: (1) sections 1983 and 1985(3) of the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 to 1996b; (2) Title II of the Americans with Disabilities Act of 1990

---

[7] ECF No. 20 at 2.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 7-8.
[11] *Id.* at 8.
[12] *Id.* at 3, ¶ 8.
[13] *Id.* at 2, ¶ 3.

("ADA"), 42 U.S.C. §§ 12101 to 12212, and section 504 of the Rehabilitation Act, 29 U.S.C.

§§ 790 to 794g; (3) the McKinney-Vento Homeless Assistance Act of 1987 ("McKinney Act" or

"Act"), 42 U.S.C. §§ 11301 to 11304; and (4) sections 2000a(d) and 2000a-3 of the Title II of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000a to 2000a-6.

## LEGAL STANDARDS

Whenever the court authorizes a party to proceed without payment of fees under the IFP

Statute, the court is required to "dismiss the case at any time if the court determines that . . . the

action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In

determining whether a complaint fails to state a claim for relief under the IFP Statute, the court

employs the same standard used for analyzing motions to dismiss for failure to state a claim

under Fed. R. Civ. P. 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under

that standard, the court "look[s] for plausibility in th[e] complaint." *Id.* at 1218 (quotations and

citations omitted) (second alteration in original). More specifically, the court "look[s] to the

specific allegations in the complaint to determine whether they plausibly support a legal claim

for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a

complaint] must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted)

(second and third alterations in original).

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule

8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does

a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (citations

omitted) (alteration in original). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. Rule 8 requires, at least, that the

allegations of a complaint put the defendant fairly on notice of the claims against him. *Twombly*,

550 U.S. at 555. The twin purposes of a complaint are to give the opposing party fair notice of

the basis for the claims against him so that he may respond and to allow the court to conclude

that the allegations, if proven, show that the plaintiff is entitled to relief. *Monument Builders of*

*Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.* 891 F.2d 1473, 1480 (10th Cir. 1989).

In analyzing Mr. Kalashnikov's amended complaint, the court is mindful that he is

proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held

to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. However, it is not "the

proper function of the district court to assume the role of advocate for the pro se litigant,"

*Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct

a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v.*

*White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Indeed, as the Court of Appeals for

the Tenth Circuit stated,

> [t]he broad reading of [a pro se] plaintiff's complaint does not
> relieve the plaintiff of the burden of alleging sufficient facts on
> which a recognized legal claim could be based. . . . [C]onclusory
> allegations without supporting factual averments are insufficient to
> state a claim on which relief can be based. This is so because a pro
> se plaintiff requires no special legal training to recount the facts

> surrounding his alleged injury, and he must provide such facts if
> the court is to determine whether he makes out a claim on which
> relief can be granted. Moreover, in analyzing the sufficiency of the
> plaintiff's complaint, the court need accept as true only the
> plaintiff's well-pleaded factual contentions, not his conclusory
> allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).

After reviewing a pro se plaintiff's complaint under the IFP Statute, the court may

dismiss the complaint for failure to state a claim "only where it is obvious that the plaintiff

cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to

amend." *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

## ANALYSIS

For the reasons set forth below, the court concludes that (I) Mr. Kalashnikov's amended

complaint fails to state claims upon which relief can be granted, and (II) it would be futile to

provide Mr. Kalashnikov with an opportunity to amend his complaint a second time. Therefore,

the court recommends dismissal.

## I.      Mr. Kalashnikov Fails to State Claims Upon Which Relief Can Be Granted

As noted above, Mr. Kalashnikov asserts the following causes of action against

Defendants, which the court groups together where appropriate: (A) violations of 42 U.S.C.

§ 1983; (B) violations of Title II of the ADA and section 504 of the Rehabilitation Act;

(C) violations of 42 U.S.C. § 1985; (D) violations of the McKinney Act; and (E) violations of 42

U.S.C. §§ 2000a(d), 2000a-3. The court will address Mr. Kalashnikov's claims in that order. For

the reasons explained below, all of Mr. Kalashnikov's claims fail, and, therefore, the court

recommends dismissal of this action.

A.      42 U.S.C. § 1983

Mr. Kalashnikov alleges Defendants violated his Fourteenth Amendment equal protection

rights and his Fifth Amendment due process rights. Section 1983 creates a right of action to

enforce the rights conferred in the United States Constitution or in a federal statute. *Nelson v.*

*Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002) ("[S]ection 1983 did not create any substantive

rights, but merely enforces existing constitutional and federal statutory rights. . . ." (internal

quotation marks, alteration, and citation omitted)). Section 1983 authorizes an injured person to

assert a claim for relief against a person who, acting under color of state law, violates the

claimant's federally protected rights. To state a claim upon which relief can be granted

under section 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the

person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487

U.S. 42, 48 (1988).

Mr. Kalashnikov's claims fail for three reasons. First, section 1983 claims cannot be

brought against state actors in their official capacities. Accordingly, Mr. Kalashnikov's section

1983 claims should be dismissed against Defendants for this reason alone. Second, assuming

*arguendo* that Defendants could be named in their official capacities, Mr. Kalashnikov's claims

still fail because Mr. Kalashnikov has not alleged sufficient facts to support a Fourteenth

Amendment equal protection claim, and a Fifth Amendment due process claim cannot be

asserted against state actors. Each reason is discussed in order below.

1.      *Section 1983 Claims Cannot be Brought Against State Actors*

Mr. Kalashnikov's section 1983 claims are brought against Defendants[14] in their official

capacities; however, these claims must be dismissed because Defendants are not "persons"

subject to suit under section 1983. Section 1983 imposes liability on any "person" who, under

color of state law, deprives another "of any rights, privileges, or immunities secured by the

Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing 42 U.S.C.

§ 1983). The United States Supreme Court has long held that states, their agencies, and their

officials acting in their official capacities are not "persons" subject to suit under section 1983.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). This is because official-capacity

suits merely constitute another way of pleading an action against the entity of which a public

officer is an agent. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Suits against state officials in their

official capacity must be treated as suits against the state. *Id.* Accordingly, all of Mr.

Kalashnikov's claims arising under section 1983 must therefore be dismissed because all claims

are brought against Defendants in their official capacities.[15]

2.      *Even if Official Capacity Claims Were Legally Cognizable, Mr.
        Kalashnikov's Claims Under the Fourteenth and Fifth Amendments are
        Not Plausible*

---

[14] Mr. Kalashnikov's 1983 claims do not apply to Defendant Gail Miller because she is a private actor and
appears to be unaffiliated with the state. *NCAA v. Tarkanian,* 488 U.S. 179, 191 (1988) (stating that the
only proper defendants in a § 1983 action are those who "represent [the state] in some capacity, whether
they act in accordance with their authority or misuse it") (quotation marks and citation omitted).
[15] Even if Mr. Kalashnikov had asserted the claims against Defendants in their individual capacities, Mr.
Kalashnikov's claims would still fail as a matter of law because Mr. Kalashnikov fails to allege
Defendants' personal involvement in the alleged constitutional violations.

Even if official-capacity claims could be brought, Mr. Kalashnikov fails to allege facts to support either an equal protection or a due process claim. The Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). To state an equal protection claim, a plaintiff must allege that he is a member of a suspect or quasi-suspect class of persons, *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011); such classes include, but are not limited to, classes identified by race, gender, alienage, or national origin, *see Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008) (describing levels of scrutiny). The plaintiff must also allege facts showing that the defendants have purposefully discriminated against the plaintiff because of his membership in that class. *Iqbal*, 556 U.S. at 676; *Brooks*, 524 F.3d at 1110-12. "[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 676-77 (internal quotation marks and citations omitted, alterations in original).

Although Mr. Kalashnikov is a member of a protected class as a racial minority and has alleged membership in a quasi-suspect class based on his gender,[16] membership in a protected group by itself does constitute grounds to bring an equal protection claim. Mr. Kalashnikov must also allege facts to show that Defendants took adverse action against him because of his

---

[16] Contrary to Mr. Kalashnikov's assertions, courts have not recognized homeless persons as a suspect or quasi-suspect class and the court declines to do so here. *See e.g., Anderson v. Herbert*, No. 2:13-CV-211, 2014 WL 6769907, at *5 (D. Utah Dec. 1, 2014); *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1108–09 (E.D. Cal. 2012) (discussing cases).

membership in a protected group. The amended complaint fails to do so. Instead, the amended complaint reads as an airing of personal grievances and inconveniences, pleaded in a conclusory fashion, about the closing of the Road Home and the relocation of the MRC to South Salt Lake. The amended complaint lacks factual allegations that the MRC site placement was motivated by intentional or purposeful discrimination on behalf of the Defendants. Mr. Kalashnikov may prefer the downtown localities to that of South Salt Lake but such preferences do not implicate the Equal Protection Clause.

Moreover, Mr. Kalashnikov's due process claims fails because Defendants are all state actors. "The Fifth Amendment due process clause only protects against due process violations caused by the federal government." *Parnisi v. Colo. State Hosp.*, 992 F.2d 1223 (Table), 1993 WL 118860, at *1 (10th Cir. April 15, 1993). None of Mr. Kalashnikov's allegations involve any federal actors. Thus, Mr. Kalashnikov's Fifth Amendment claims should also be dismissed for this reason.[17]

### B.    Disability Discrimination Claims

Mr. Kalashnikov asserts that Defendants discriminated against him based on disability. Although Mr. Kalashnikov fails to allege any facts suggesting that any Defendant should be liable under the ADA, in an abundance of caution, the court considers whether the facts alleged suggest disability discrimination. Construing the amended complaint liberally, Mr. Kalashnikov may be asserting that Defendants denied him a reasonable accommodation or subjected him to discrimination because of his disabilities in violation of Title II of the ADA and section 504 of

---

[17] The due process claims also fail because aside from asserting that his due process rights were violated, nowhere in the amended complaint does Mr. Kalashnikov explain how he was denied due process.

the Rehabilitation Act. But Mr. Kalashnikov does not allege any facts supporting a claim under

Title II of the ADA or the Rehabilitation Act.

Claims under the ADA and Rehabilitation Act are analyzed similarly. *Cohon ex rel. Bass*

*v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011). To state a claim under both

statutes, a plaintiff must show that he has a qualified disability, that the defendants are subject to

the statutes, and that he was denied access to covered services, programs, or activities because of

his disability. *Id.* at 725-26. Here, Mr. Kalashnikov does not allege any facts concerning any

mental or physical disability. But even if the court assumes that Mr. Kalashnikov suffers from a

qualified disability, he does not allege any facts suggesting that Defendants failed to reasonably

accommodate those disabilities or denied him access to services because of those disabilities.

Mr. Kalashnikov's disability discrimination claims under the ADA and the Rehabilitation Act

must be dismissed for failure to state a claim.

      C.     42 U.S.C. § 1985

The essential elements of a section 1985(3)[18] claim are as follows: (1) a conspiracy,

motivated by racially discriminatory animus; (2) to deprive a plaintiff of equal protection or

equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or

deprivation resulting from the conspiracy. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.

1993). In addition, the conspiracy must be motivated by "some racial, or perhaps otherwise

---

[18] Mr. Kalashnikov does not specify the subsection of section 1985 upon which he bases his claims, but based on a liberal reading of the amended complaint, it would appear Mr. Kalashnikov seeks to invoke section 1985(3) which is the only section under 42 U.S.C. § 1985 that could arguably apply in the instant case.

class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The amended complaint generally alleges that the "inferior location" of the MRC in contrast to the more centrally located women's shelters constitutes discrimination against him based on his race, gender, and disability; however, the amended complaint fails to allege any conspiratorial actions occurred, let alone the occurrence of racially motivated conspiratorial actions. Mr. Kalashnikov's lone conspiracy allegation that the location of the WRC "is direct evidence of the . . . unreasonable conspiracy against [him], to displace all homeless transient males . . . far from downtown SLC" is entirely conclusory and insufficient to state a claim for section 1985(3) conspiracy. For those reasons, the court concludes that Mr. Kalashnikov fails to state a claim under 42 U.S.C. § 1985(3).

D.      The McKinney Act

Mr. Kalashnikov vaguely refers to the McKinney Act which aims "to provide funds for programs to assist the homeless, with special emphasis on elderly persons, handicapped persons, families with children, Native Americans, and veterans." 42 U.S.C. § 11301(b). To the extent Mr. Kalashnikov seeks to assert a claim that Defendants violated the McKinney Act, Mr. Kalashnikov's claims must fail because no private right of action exists under the McKinney Act. *See e.g.*, *Joseph v. Safehaven CEC*, No. CV 14-3940, 2015 WL 5276448, at \*7 (E.D. Pa. Sept. 9, 2015) (holding the [McKinney] Act does not create enforceable individual rights); *Richardson v. City of New York*, No. 12 CIV. 2545 WHP, 2013 WL 2124176, at \*3 (S.D.N.Y. Apr. 17, 2013) (same). Mr. Kalashnikov may not seek to recover under the McKinney Act because "where the text and structure of a statute provide no indication that Congress intends to

create new individual rights, there is no basis for a private suit, whether under § 1983 or under an

implied right of action." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 286 (2002). Accordingly, Mr.

Kalashnikov's McKinney Act claims should be dismissed.[19]

       E.      42 U.S.C. §§ 2000a(d), 2000a-3

Mr. Kalashnikov's claims for violations of sections 2000a(d) and 2000a-3 fail because

they are conclusory in nature and vaguely pleaded at best. Each of those claims are supported by

a single sentence, with no supporting factual allegations. The court concludes that the claims fail

because they do not satisfy the basic pleading requirements of Rule 8(a)(2).

## II.      Futility of Amendment

Although the court has concluded that Mr. Kalashnikov's amended complaint should be

dismissed, the court recognizes that it may dismiss a pro se plaintiff's complaint for failure to

state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged

and it would be futile to give him an opportunity to amend." *Kay*, 500 F.3d at 1217 (quotations

and citation omitted). Given the foregoing analysis, and the fact that Mr. Kalashnikov has

already been provided with an opportunity to amend his complaint, the court has determined that

Mr. Kalashnikov could not provide any additional, plausible allegations that would save any of

---

[19] Although the McKinney Act itself does not provide a mechanism for civil enforcement of the rights it provides, some courts have held plaintiffs may, at least in certain circumstances, enforce those rights by invoking 42 U.S.C. § 1983. *See e.g.*, *Lampkin v. District of Columbia*, 27 F.3d 605, 612 (D.C. Cir. 1994); *Nat'l Law Ctr. on Homelessness & Poverty, R.I. v. N.Y.*, 224 F.R.D. 314, 318 (E.D.N.Y. 2004). Here, however, even if the Act can be asserted via section 1983, the outcome remains the same, for the reasons already stated, see *supra* Section I.A, and because Mr. Kalashnikov has not alleged any facts that would support a claim under the McKinney Act. Indeed, Mr. Kalashnikov has not even identified what portion of the Act Defendants allegedly violated.

his claims from dismissal. Accordingly, the court concludes that it would be futile to provide Mr.

Kalashnikov with an opportunity to amend his complaint.

## CONCLUSION

For the foregoing reasons, the court concludes that Mr. Kalashnikov's amended

complaint fails to state any claims upon which relief can be granted. Therefore, under the

authority of the IFP Statute, Mr. Kalashnikov's amended complaint should be dismissed with

prejudice. 28 U.S.C. § 1915(e)(2)(B)(ii).

## RECOMMENDATION

Based upon the foregoing, IT IS HEREBY RECOMMENDED that this action be

DISMISSED WITH PREJUDICE under the authority of the IFP Statute. 28 U.S.C.

§ 1915(e)(2)(B)(ii).

Copies of this Report and Recommendation are being sent to all parties, who are hereby

notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must

file any objection to this Report and Recommendation within 14 days after being served with a

copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver

of objections upon subsequent review.

DATED this 2nd day of December 2020.

BY THE COURT:

_____

JARED C. BENNETT
United States Magistrate Judge

14